GORMAN v. CITY OF CLEVELAND ET AL.

*Negligence—Street railroad required to use only protective devices in general use—Verdict directed for defendant company complying with safety device law—Passenger's foot injured by closing street car door—Conductor's failure to keep hand on door control not negligence—Collision between street car and city rubbish collecting truck—Health measures exercise of governmental function—Collecting rubbish a governmental function.*

1. Although street railroad companies are bound to exercise the highest degree of care with respect to passengers, such care requires the company to use only such protective devices as are in general use.

2. In passenger's action against street railway company for damages caused by a street car door closing upon and injuring his foot when the street car was struck by a motor truck, directing a verdict for the defendant was not error where the company's compliance with the law as to safety devices was not disputed.

3. Where in a collision between a motortruck and a street car the street car passenger's foot was injured by the

street car door closing upon it, the fact that the conductor had not kept his hand on the wheel regulating the opening and closing of the door *held* not to show negligence.

4. Where a city undertakes to carry out health measures, such work is undertaken in the city's governmental, and not in its proprietary, capacity.

5. In an action against a city by a street railway passenger for personal injury to plaintiff in a collision between the street car in which he was riding and the city's rubbish collecting truck, collecting rubbish under authority of Section 3649, General Code, *held* a governmental, not a proprietary, duty, hence city was not liable in damages for plaintiff's injury; "rubbish" being defined as waste or rejected matter, trash, debris, etc.

(Decided May 2, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Quigley & Byrnes,* for plaintiff in error.
*Messrs. Squire, Sanders & Dempsey* and *Mr. Carl Shuler,* for defendants in error.

SULLIVAN, P. J. This case is here on error from the court of common pleas of Cuyahoga county, and the case below was one for the recovery of $15,000 damages to the plaintiff in error, who was the plaintiff below, because of an accident April 30, 1924, on West Fifty-second street and Lorain avenue in the city of Cleveland, while he was a passenger on a west-bound Lorain avenue street car of the Cleveland Railway Company.

It appears that when the car stopped at West Fifty-Second street, plaintiff attempted to alight, and while so doing the street car itself was violently struck in the rear by a truck belonging to the city

of Cleveland, and used to collect ashes and rubbish from residences and places of business within a certain portion of the district of Cleveland, and that when the collision occurred the sliding door in the rear of the street car, which was opened for the alighting of passengers, slid in its groove violently towards the plaintiff and the door closed upon his foot, causing the injuries complained of in the petition.

It is alleged as against the street railway company, in a joint charge of negligence against it and the city of Cleveland, that the street car was not properly equipped with a safety device so as to prevent an accident of this nature; and a failure on the part of the conductor to maintain and control the mechanism operating the doors, so that the accident would not occur, is further alleged.

It is claimed by the Cleveland Railway Company that it was under no obligation to equip its car for the purpose of providing against collisions of the character at bar, and it is further alleged that there was no statement that the device as to the opening and closing of the door was not the one in general use among street railways.

On the part of the city of Cleveland it is claimed that the collection of the ashes and the garbage is a governmental and not a proprietary duty, and consequently no liability ensues.

The court, on motion of both defendants for a directed verdict, granted the same and rendered judgment for the defendants.

From an examination of the opening statements upon which the motions were based and sustained it appears to be well established by the authorities

that the street railway company, while bound to exercise the highest degree of care with respect to its passengers, is only compelled to use devices in general use for the purpose of protecting the passengers from injury, and, inasmuch as the shutting of the street car door was caused by unusual and extraordinary violence, of such a nature as not to be ordinarily anticipated, it is our judgment that the court committed no error in sustaining the motion for a directed verdict in behalf of the street railway company, especially when it appears that the company had complied with the law in relation to furnishing the devices for the closing and shutting of the door that were in general use. In other words, there was no issue made that the devices in question were not in general use and proper for the performance of their functions under ordinary conditions.

The charge that the street railway company was negligent because the conductor did not keep his hand all the time upon the wheel which opened and closed the door is no basis for the charge of negligence, because that would compel the conductor to devote his entire care and attention to the passengers alighting or ascending, when so to do under such conditions might imperil the safety of the other passengers in the car not alighting, and prevent him from doing his duty in other matters which might properly engage his attention, which he could not do were he obliged in the exercise of ordinary care to keep his hand on the wheel during the entire time that passengers were alighting or ascending. It is obvious that as to the fares alone he could not thus adequately attend to his duty,

and it is apparent that many other duties of a like nature might naturally arise.

Hence it is our judgment that no prejudicial error existed with regard to this action of the court in so far as it involved the Cleveland Railway Company.

The denial of liability under the record in the case on the part of the city of Cleveland, on the ground that the collection of the ashes and the garbage was a governmental function and not a proprietary one, compels an examination of what might appear to be a conflict between the Court of Appeals of the Cincinnati district and the Court of Appeals sitting within this district.

First, however, with reference to the definitions of garbage and rubbish, we find the following meaning of rubbish given in *Filbey* v. *Combe,* 2 Mees & W., 677, 683, to be found under the proper heading in Words and Phrases, vol. 7, p. 6270:

"We find that under a Georgia statute that such a term and its synonyms mean anything such as dust, ashes or rubbish, which become the property of scavengers by the consent of the owner. Rubbish is usually articles of any nature for which the owner has no use, and may be called rubbish, garbage, offal, debris, or any other name that is suited to the worthless articles."

Webster gives the definition as follows:

"Waste or rejected matter; anything worthless or valueless; trash; debris; specifically fragments of building materials or ruined buildings."

"What rubbish and what offal." Shakespeare.

It might be vegetable or animal refuse, or both. It also might be a combination of all the articles

named, which, if left uncollected, would ferment, sour, rot and decay, and consequently, unless collected and disposed of, become injurious and deleterious to the public health, to the extent even of producing an epidemic, which might involve not only the community, but the state, because every one coming in contact with it, no matter where residing, might become affected and diseased, and thus a contagion be spread over a much larger territory. Distance would be no bar, because the disease or contagion might be carried wherever a person afflicted might travel. Hence it is not violence to say that it would become the duty of government, whether municipal or state, on account of its far-reaching effect, to take cognizance of such a condition, and by the collection and disposal of the refuse prevent disastrous effects by checking it in its incipiency; and it is not unreasonable to suppose that, as a matter of self-defense, in behalf of the body politic, it becomes the paramount duty of the government itself, whether municipal or state, to prevent any impending peril by taking immediate steps for the collection and disposal of garbage and rubbish, and not to depend upon people not charged with the public responsibility to eradicate the evil.

Were the city to leave such an important function to each individual property owner, dire results might follow from indifference and neglect. Is not that conclusion the inevitable sum and substance of human experience, the inevitable logic of the situation? In other words, the necessities of the case make this duty a paramount one to be performed by the government on account of the

universal peril that might follow in case of neglect or indifference throughout the entire city and the entire state, for the reasons above given.

In *Shilling* v. *City of Cincinnati*, decided March 29, 1915, 22 C. C., (N. S.), 526, 34 C. D., 25, it was laid down in the syllabus that the removal of ashes by a municipality from business homes and the residences of private citizens is an exercise of a governmental function, and not a performance of a private or proprietary duty. While it is true that in that case there was another ground which would defeat recovery, yet it does not destroy the principle above stated, unqualifiedly laid down as the law, regardless of the incidental question in the case. In that case, page 527, the court used the following language:

"While there is a conflict of authority as to whether or not the removal of ashes from the residences of the citizens is an act of the municipality in its governmental capacity, we are of the opinion that the weight of authority supports the contention that such an activity on the part of the municipality is an exercise of a governmental function and not an exercise of its private or proprietary duties."

It is a well-settled proposition that with respect to health measures the duty rests upon the government and is not proprietary, for the reason that such measures must have universal application throughout the entire jurisdiction, whether city or state, and that can be accomplished only by the exercise of a governmental, not a proprietary, function.

We are aware that in this district, in *Russo,*

*Admr.,* v. *City of Cleveland,* decided November 12, 1917, 28 O. C. A., 25, 29 C. D., 445, the collection of garbage by a municipality was held not to be a duty performed in the exercise of a governmental function, and that in an action against a municipality for injury occasioned thereby it would be error to direct a verdict for. the defendant. In that case the court seems to base its reasoning upon *Cincinnati* v. *Cameron,* 33 Ohio St., 336, which says, at page 367:

"In its governmental or public character, it [the municipality] represents the state, while in the other it is a mere private corporation. As a political institution, the municipality occupies a different position, and is subject to different liabilities from those which are imposed upon the private corporation. But because these two characters are united in the same legal entity, it does not follow that the shield which covers the political equally protects the private corporation."

"The power given a city to construct sewers, is not a power given for governmental purposes; nor is it a public municipal duty imposed upon the city, like that of keeping streets in repair, but it is a special legislative grant to the city for private purposes. The sewers of the city, like its works for supplying the city with water, are the private property of the city; the corporation and its corporators—its citizens—are alone interested in them; the outside public, as people of the state at large, have no interest in them, as they have in the streets of the city, which are public highways. *Detroit* v. *Corey,* 9 Mich., 165."

It is plain, from a reading of the above, that

the questions at bar here, to-wit, health and fire measures, did not appear there as predominant issues, determining the difference between a governmental and a proprietary function.

The court in the *Russo case* further quotes, on page 28, from *Commissioners* v. *Duckett,* 20 Md., 476, 83 Am. Dec., 557, as follows:

"With regard to the liability of a municipal corporation for the acts of its officers, the distinction is, between an exercise of those legislative powers which it holds for public purposes, and, as a part of the government of the country, and those private franchises which belong to it as a creature of the law; within the sphere of the former, it enjoys the exemption of government, from responsibility of its own acts, and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power. But in regard to the latter, it is responsible for the acts of those who are in law its agents, though they may not be appointed by itself."

We think in the present case, under the language quoted, that the act of collecting the refuse and garbage was the exercise of a governmental function, because of the distinction that the legislative powers exercised pertain to public purposes as a part of the government of the country, for which reasons they are governmental, as distinguished from those private franchises which belong to it as a creature of the law. As the language above states:

"Within the sphere of the former, it enjoys the exemption of government, from responsibility of its own acts, and for the acts of those who are in-

dependent corporate officers, deriving their rights and duties from the sovereign power. But in regard to the latter, it is responsible for the acts of those who are in law its agents, though they may not be appointed by itself.''

That the commonwealth of Ohio is directly affected by the sanitary condition of the city of Cleveland cannot be denied, for the reason, as above stated, that contagion spreads wherever there is freedom of human locomotion and over any territory where the wind blows. The condition of Cuba and Porto Rico affected the people of all countries, because yellow fever, before its eradication, was a menace not only to this country, but to all others, and if it had been left for the inhabitants to take care of themselves, the contagion would have become universal. We quote this episode because it has become a part of universal history of which courts can take judicial notice.

If the city of Cleveland should abandon its collection of garbage and refuse within the next 24 hours, the danger of the community and its people within the next 6 months is obvious, for it is a well-established proposition of government that when it comes to public health the community must take care of itself, and that includes the inhabitants and the body politic, and this is based upon the wisdom of the ages, that what is the duty of everybody is the duty of nobody, especially when it pertains to questions of public health and public welfare.

We think under the record in this case that the conduct of the city in the collection of its garbage is not only a measure preservative of health, but a protection against fires, naturally arising from

accumulations of the materials in question, thus endangering the lives as well as the health of the inhabitants of the city.

To support this view we cite *City of Akron* v. *Butler,* 108 Ohio St., 122, 124, 140 N. E., 324, 325, as follows:

"It was an incident to street cleaning and was an act governmental in its nature, and the city as a matter of public policy would be exempt from liability for the negligence of its servants. If, on the other hand, it was a mere shipment of freight for a purpose other than the use of the street cleaning department, or some other governmental activity, as distinguished from proprietary activity, the city would be liable for the negligence of its servants. * * *

"It will thus be seen that the truck was under the supervision of an official whose duties with reference to street cleaning come within the general classification of governmental functions * * *."

In the *City of Akron case* the plaintiff was injured by an automobile belonging to the street cleaning department of the city of Akron, which automobile at the time of the accident was being used for delivering a broom, belonging to the street cleaning department, to the freight station to be shipped as a sample. At the conclusion of all of the evidence in that case the jury returned a verdict for the defendant. The Supreme Court reversed and entered judgment for the plaintiff in error, the city of Akron, and used the language above quoted.

Further we think in line with our view is the case of *Scibilia* v. *Philadelphia,* 279 Pa., 549, 124

A., 273, 32 A. L. R., 981, wherein the court held that a municipality was not liable for injuries caused by the driver of a truck who was an employe of the department of street cleaning at a time when he was engaged in hauling ashes to a city dump as part of the gratuitous undertaking of the city to collect and dispose of rubbish, although the city may have received a small incidental revenue through the disposal of the refuse gathered. The court held as follows:

"In other words, it is the character of the service involved which must serve as a criterion to govern controversies such as the one at bar. The care of public health is undoubtedly a subject matter of general concern, and how it shall be accomplished is a public question. When the Legislature leaves its accomplishment to any degree in the hands of the several municipalities, they act as governmental agencies, and not as business corporations, in the performance of the power placed at their disposal or of the duty thus put on them, whichever it may be. That cleanliness makes for health must be accepted as a truism; and that the regular, systematic gathering by municipalities of refuse, including ashes, and the proper, orderly and efficient disposal thereof promotes cleanliness, is apparent. Such gathering and disposal of refuse is primarily a health measure, the duty to perform which might have been placed on the health department; the fact that it was put elsewhere makes it none the less a health measure, and, hence, a public or governmental function within the police power."

We are therefore of the opinion that the weight

of the authorities all lean toward the construction that in the instant case the act in question was governmental.

It is well to keep in mind, in considering the record, the following language of Section 3649, General Code, which, in enumerating the powers of municipalities, provides as follows:

"To provide for the collection and disposition of sewage, garbage, ashes, animal and vegetable refuse, dead animals and animal offal and to establish, maintain and regulate plants for the disposal thereof."

From its reasoning *Stadler* v. *City of Cleveland,* 12 N. P., (N. S.), 321, 22 O. D., (N. P.), 783, would appear to be in line with our views in the instant case. We quote from this authority the syllabus as follows:

"The authority which is vested in municipalities to control the collection and reduction of garbage * * * does not include the right to take, without compensation to the owners, slaughterhouse offal and other articles of a sanitary character, unless such articles are mixed with garbage and other matter which is noxious and dangerous to health and life."

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.