[No. F005828. Fifth Dist. Aug. 21, 1986.]

CITY OF FRESNO, Plaintiff and Respondent, v.
PINEDALE COUNTY WATER DISTRICT, Defendant and Appellant.

**COUNSEL**

Eugene L. Adams for Defendant and Appellant.

James A. McKelvey, City Attorney, and C. William Brewer, Assistant City Attorney, for Plaintiff and Respondent.

## OPINION

**HAMLIN, Acting P. J.**—Pinedale County Water District (District) appeals from a judgment permanently enjoining it from providing solid waste collection services to citizens residing both within its boundaries and those of the City of Fresno (City). The issue on appeal is one of first impression—whether City's annexation of District's territory terminates District's authority to provide solid waste collection service to the annexed territory after expiration of the five-year "phase-out term" to which City consented. We will conclude that it does and affirm the judgment.

### FACTS

The facts are undisputed. City is a municipal corporation and charter city organized under the Constitution and laws of the State of California. It is empowered to provide solid waste management services, including trash collection, to its citizens.

District is a limited power county water district organized under Water Code section 30000 et seq. District is also empowered to provide trash collection services to its residents.

In recent years City has expanded by annexing land. Some of these annexations have included territory which is also within District. In fact, more than 80 percent of the area District is authorized to serve is now within City's boundaries. The validity of these completed annexations is not at issue.

District has for a number of years provided potable water and sewage collection to its residents. After 1966 and until 1978 it also provided trash collection services through its own equipment and employees. In May 1978, District began providing all its trash collection services through an independent private contractor, Browning-Ferris Industries (BFI).

In July 1978, the Fresno City Council discussed District's trash collection service to residents of City who also resided in District. City's assertion of

exclusive authority over solid waste collection for these residents was debated at this public meeting. This led to City's decision to permit District a five-year phase out of trash collection in City, to coincide with the termination of the BFI/District contract for such services. Thereafter, notices were mailed to District and BFI to cease and desist collecting solid waste for residents of City on or before May 31, 1983. Notwithstanding this notice, on June 1, 1983, District entered into a new contract with yet another private contractor for trash collection for all the territory within the District.

A utility operating in Fresno must obtain a franchise. (Fresno Mun. Code, §§ 6-403–6-409.) In addition, Fresno's solid waste ordinance requires permits prior to collecting solid waste in City. Neither Pinedale nor its contractor has obtained the required franchise or permits.

The trial court concluded that District could not continue to provide solid waste collection services without complying with City's ordinance. It relied on *City of San Diego* v. *Otay Municipal Water Dist.* (1962) 200 Cal.App.2d 672 [19 Cal.Rptr. 595]. There, the defendant water district was organized under the Municipal Water District Act of 1911 (Stats. 1911, ch. 671, p. 1290 et seq.). It had about 60,000 acres within its boundaries when the City of San Diego annexed 4,000 of those acres. Thereafter an improvement district was formed, covering the 4,000 annexed acres plus another 8,000 of the water district's 60,000 acres, to construct a distribution system that would enable the water district to furnish water to the 12,000 acres for the first time. The city brought a declaratory relief action to prevent the water district from furnishing water to the annexed 4,000 acres on the ground this function was a municipal affair. The court explained it was necessary to examine the city's charter, the act under which the water district was organized, and the annexation statute by which the overlapping territory in question became a part of the city as parts of a whole system of law. From this examination, the court concluded, "the Legislature intended to limit the authority of a water district over territory annexed by a city, commensurate with any limitation expressed in the charter of the annexing city." (*Id.* at p. 677.)

District concedes section 30065 of the Water Code is essentially the same as section 33 of the Municipal Water District Act of 1911 considered in *Otay*. Additionally, it concedes the County Water District Law (Wat. Code, § 30000 et seq.) under which District was organized contains no provision precluding the application of the provisions of City's charter and ordinances regulating solid waste collection. Moreover, the validity of City's annexation of more than 80 percent of District's territory is not challenged. Those

annexations are complete and without condition, restriction or agreements pertaining to solid waste collection. District also recognizes the facts of *Otay* and the instant case are similar except that neither the district nor the city had furnished water to the annexed territory in *Otay* whereas in the instant case District had furnished the only solid waste collection services in the annexed territory before annexation. Notwithstanding these concessions, District argues that statutes enacted by the Legislature since *Otay* evidence a legislative intent that City not acquire through annexation alone the exclusive right to provide services to the annexed territory that had previously been provided by District. Specifically, District argues the Legislature's abolition of the "doctrine of merger by operation of law" by enactment of the District Reorganization Act of 1965 in Government Code section 56400 reflects a critical change in the legislative intent as to the effect of annexation.

District's contention that the outcome of this case is controlled by the abolition of the doctrine of merger by operation of law is not persuasive. That argument incorrectly assumes City can prevail only if it takes over the functions of District as a consequence of the annexation. Such an assumption is unfounded.

The *Otay* holding is not based on merger of the water district into the City of San Diego or the city's succession to the water district's functions. Instead, the court simply concluded there was nothing in the Municipal Water District Act of 1911, under which the water district was created, or in the statutes under which the city annexed the 4,000 acres, that was inconsistent with the ordinances of the City of San Diego. (*City of San Diego* v. *Otay, supra,* 200 Cal.App.2d at pp. 677-679.) For the reasons we will discuss, we believe applicable law, including legislative enactments since *Otay,* as parts of a whole system of law, leads to the same conclusion that City has the power to require a franchise and permits as a condition precedent to providing waste collection services to its inhabitants, including the annexed territory.

## DISCUSSION

The California Constitution provides that a city may adopt a charter giving it the power to "make and enforce all ordinances and regulations in respect to *municipal affairs,* . . . City charters adopted pursuant to this Constitution . . . and with respect to municipal affairs shall supersede all laws inconsistent therewith." (Cal. Const., art. XI, § 5, subd. (a), italics added.) Thus, on municipal affairs (matters of internal or local concern) the city charter is paramount to any inconsistent laws on the subject enacted by the Leg-

islature, subject to basic constitutional limitations. (See *Wilson* v. *City of Los Angeles* (1960) 54 Cal.2d 61, 65 [4 Cal.Rptr. 489, 351 P.2d 761]; *Cramer* v. *City of San Diego* (1958) 164 Cal.App.2d 168, 171 [330 P.2d 235]. See generally, 5 Witkin, Summary of Cal. Law (8th ed. 1974) §§ 448-453, pp. 3746-3751; 2 McQuillin, The Law of Municipal Corporations (rev. 3d ed. 1979) § 4.29, pp. 58-68, § 4.78, pp. 133-134.)

■ "As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine)." (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) Thus, although cities may legislate upon matters of statewide concern, in the event of conflict with the state law, state law controls. (*Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 369-370 [125 P.2d 482, 147 A.L.R. 515].)

■ Since our Constitution fails to define "municipal affairs," courts must decide under the facts of each case whether the subject matter is of municipal or statewide concern. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158].) "What constitutes a strictly municipal affair is often a difficult question . . . ." (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 316 [152 Cal.Rptr. 903, 591 P.2d 1].) "No exact definition . . . can be formulated, and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case." (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 147 [82 P.2d 434, 126 A.L.R. 838].) Furthermore, what is a municipal affair changes with changing conditions. "What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state." (*Pac. Tel. & Tel. Co.* v. *City & County of S.F.* (1959) 51 Cal.2d 766, 771 [336 P.2d 514]. See generally, Sato, *"Municipal Affairs" in California* (1972) 60 Cal.L.Rev. 1055; Note, *The California Preemption Doctrine: Expanding the Regulatory Power of Local Governments* (1974) 8 U.S.F. L.Rev. 728.)

In deciding whether the matter is a municipal affair, courts will give great weight to the legislative purpose and those "factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs, nor does it impair the constitutional authority of a home rule city or county to enact and enforce

its own regulations to the exclusion of general laws if the subject is held by the courts to be a municipal affair rather than of statewide concern; stated otherwise, the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern." (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].) Nevertheless, a legislative determination not to impose a limitation of a general law on charter cities is effective. (See *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 821 [86 Cal.Rptr. 268].)

■ If there remains a "fair, reasonable and substantial" doubt whether a matter is a municipal or state affair, the doubt must be resolved in favor of the legislative authority of the state. (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *Cockerill* v. *City of Redding* (1961) 198 Cal.App.2d 108, 111 [17 Cal.Rptr. 754].)

■ The failure to remove trash and garbage from streets is a menace to society which endangers public health and safety. "The accumulation of decomposed garbage which is offensive to the smell, of substances which if permitted to remain uncared for would poison the atmosphere and breed diseases, infectious and contagious, among the people of one city, and might well spread statewide, is of course a concern to the entire state." (*Matula* v. *Superior Court* (1956) 146 Cal.App.2d 93, 103 [303 P.2d 871]. See also *Gorman* v. *City of Cleveland* (1927) 26 Ohio App. 109 [159 N.E. 136, 137-139].) This concern prompted the California Legislature to adopt a state policy for dealing with solid waste management. (Health & Saf. Code, §§ 4270-4273, 4510-4511; Gov. Code, §§ 66770-66781. See also Stats. 1972, ch. 342, pp. 642-650.) The Legislature noted quite accurately that: "The increasing volume and variety of solid wastes being generated throughout the state, coupled with often inadequate existing methods of managing such wastes, are creating conditions which threaten the public health, safety, and well-being by contributing to air, water, and land pollution, to the production of flies, rodents, and litter, to the waste of dwindling natural resources, and to the general deterioration of the environment." (Gov. Code, § 66701, subd. (a).)

McQuillin points out that there is some conflict among the jurisdictions as to whether garbage removal is a state or municipal affair, but generally it is a state affair. (2 McQuillin, *supra,* § 4.98, p. 169.) Aware of this split, our Legislature has divided the subject and left some matters solely for local concern. Government Code section 66771 states: "Standards included in the state policy for solid waste management may include the location, design, operation, maintenance, and ultimate reuse of solid waste processing or

disposal facilities, *but shall not include aspects of solid waste handling or disposal which are solely of local concern and not determined by the board to be of statewide concern, such as, but not limited to, frequency of collections, means of collection and transportation, level of service, charges and fees, designation of territory served through franchises,* contracts or governmental employees, and purely aesthetic considerations." (Italics added.)

Similarly, Health and Safety Code section 4260 preserves to local government (city and county) control over solid waste collection services to its inhabitants by providing: "*No* city, county, *district,* or public or municipal corporation *shall* acquire and *operate* or cause to be acquired and operated a dump or site for the disposal of garbage or refuse, or *transfer station or collection point for garbage or refuse, within a city without the consent of the city council,* or within the unincorporated area of a county without the consent of the board of supervisors." (Italics added.)

District attempts to downplay the importance of Health and Safety Code section 4260 in arriving at a decision whether solid waste collection is a matter of local or state concern. It points out that the statute does not define "collection point" and that it was enacted in 1957, a date preceding the legislative authorization to water districts to provide trash collection services for its inhabitants. We do not regard either observation as significant. Section 4260 manifests a legislative intent that solid waste collection be a matter of local concern. The absence of a definition of "collection point" and precisely what district or corporations would have then been likely to acquire and operate one of the designated facilities does not detract from that intent.

■ We conclude that Government Code section 66771, Health and Safety Code section 4260, and other applicable laws, as parts of a whole system of law, recognize the need of local government (city and county) to exercise control over the provision of solid waste collection services. City's charter, franchise ordinance, and solid waste collection ordinance properly confer upon City the right to exclusive control over solid waste collection services within its boundaries. It is a necessary exercise of the City's police power to require that any provider of solid waste services to its inhabitants obtain a franchise and appropriate permits so as to promote efficiency in the collection and removal of solid waste and effective regulation of such providers. (See 2 McQuillin, *supra,* § 26.135, pp. 320-321. See generally, *Matula* v. *Superior Court, supra,* 146 Cal.App.2d 93.) The trial court properly held that without such a franchise and appropriate permits District could not provide solid waste collection services to residents of City within the annexed territory.

The judgment is affirmed.

Ballantyne, J., and Papadakis (V. N.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied October 29, 1986.

---

*Assigned by the Chairperson of the Judicial Council.