[No. E029777. Fourth Dist., Div. Two. Feb. 11, 2002.]

HOME GARDENS SANITARY DISTRICT, Plaintiff and Appellant, v. CITY OF CORONA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part A.

88

**COUNSEL**

Harper & Burns and Alan R. Burns for Plaintiff and Appellant.

Best, Best & Krieger, Victor L. Wolf and Kevin T. Collins for Defendants and Appellants.

## OPINION

**McKINSTER, J.**—A sanitary district exercises its statutory authority to construct sewers within its boundaries and to require all property owners to connect to those sewers when they need sewer service. A city then annexes part of the land within the sanitary district and imposes restrictions on the ability of property owners within the annexed portion of the district to connect to the district's sewers. Does the district have the right to prevent the city from enforcing those restrictions? If so, does the district also have the exclusive right to provide sewer services within the common area?

The trial court enjoined the city from preventing property owners from connecting to the district's sewers but declared that both agencies had the right to provide sewer service to the area. Both sides appeal. We conclude that the trial court correctly enjoined the city but erred by failing to recognize that the district has exclusive jurisdiction to provide sewer service within its boundaries, including to territory that is also within the city. Accordingly, we modify the judgment to declare that the district has exclusive jurisdiction.

### FACTUAL AND PROCEDURAL BACKGROUND

The Home Gardens Sanitary District (District) is a sanitary district organized and existing pursuant to the Sanitary District Act of 1923. (Health & Saf. Code, § 6400 et seq.) As such, it has the statutory authority to construct and operate sewage collection and treatment facilities. (*Id.*, § 6512, subd. (a).) It has provided sewer service to the area in the vicinity of the intersection of Magnolia Avenue and East Sixth Street (the Area) since 1963.

In 1986, the city initiated, and the county's Local Agency Formation Commission (LAFCO) approved, an annexation of unincorporated territory that includes the Area. As a result, the Area is within the territorial jurisdiction of both the District and the city.

Like sanitary districts, cities also have the statutory authority to provide sewer service. (Gov. Code, § 38900.) During the annexation proceedings before LAFCO, it was noted that the overlapping boundaries of the two agencies would create the potential for the duplication of sewer services.

Although the commission's staff recommended that the city and the District "work together within the next few years to arrive at the best solution for delivering sewer service within the city under a single purveyor," the commission did not order the two agencies to do so.

The city and the District did not agree to a single purveyor of sewer services for the Area. Instead, in 1999 the city adopted a policy that property in the Area could connect to the District's sewers only if (1) the property "fronted" on a street with a District sewer line, (2) there was no city sewer line in that street, and (3) the District had entered into an interagency agreement with the city. All other property would be required to connect to the city's sewage collection system, even if some other side of that property adjoined a street with a District sewer.

The District sued the City of Corona and its city council (collectively City), seeking declaratory and injunctive relief and a writ of mandate. After a trial in which the parties submitted evidence solely in the form of written declarations and a request for judicial notice, the trial court found: "The City's unilateral attempt to determine which properties may be served by District in the overlapping area was not a valid exercise of the City's police power but was instead an arbitrary, capricious and invalid attempt to usurp District's authority and power to provide sewer service within its territorial boundaries." Accordingly, the trial court entered a judgment (1) authorizing the issuance of a peremptory writ of mandate that directs the City to set aside its sewer connection policy as to the Area, (2) permanently enjoining the City from interfering with the District's power to provide sewer service within the District, and (3) declaring that both the District and the City have the right to provide sewer service within the Area.

The District appeals, challenging only the third portion of the judgment. The City cross-appeals from the judgment, challenging the first and second portions.

ISSUES ON APPEAL

Although the parties frame the issues somewhat differently, we understand the principal issues to be three in number: (1) Is the action untimely? (2) Does the City have the right to interfere with the District's exercise of its statutory powers? (3) Does the District have the exclusive right to provide sewer service within the Area?

ANALYSIS

A. *Because LAFCO Made No Decision Regarding Sewer Service, the District's Action Is Not an Untimely Challenge to a LAFCO Decision.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *The Trial Court Did Not Err by Enjoining the City from Interfering with the District's Exercise of the Powers Conferred upon the District by State Law.*

 The fundamental issue is whether the City may use its general police power to override the District's authority to provide sewer service. As the trial court correctly concluded, it may not.

The identical issue was raised on substantially similar facts in *Rodeo Sanitary Dist. v. Board of Supervisors* (1999) 71 Cal.App.4th 1443 [84 Cal.Rptr.2d 601] (*Rodeo*). There, two sanitary districts had served unincorporated areas within Contra Costa County for over 50 years by providing solid waste collection and disposal services. (*Id.* at p. 1445.) In 1991, the county adopted an ordinance requiring anyone performing those services to contract exclusively with the county. (*Id.* at pp. 1445-1446.) The districts sued, but the county successfully moved for summary judgment. (*Id.* at p. 1446.)

The Court of Appeal reversed. (*Rodeo, supra,* 71 Cal.App.4th at p. 1455.) As the court explained (*id.* at p. 1447), our Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations," but only to the extent that they are "not in conflict with general laws." (Cal. Const., art. XI, § 7.) It is this constitutionally conferred power that is commonly known as the local government's "police power." (*California Rifle & Pistol Assn. v. City of West Hollywood* (1998) 66 Cal.App.4th 1302, 1310 [78 Cal.Rptr.2d 591].) The scope of the police power of a county or city, although very broad, is nevertheless subordinate to state law. (*Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876]; *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001].) Accordingly, local regulations that conflict with the general law are void. (*IT Corp. v. Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 90 [2 Cal.Rptr.2d 513, 820 P.2d 1023].)

Sanitary districts are created pursuant to state law (Health & Saf. Code, § 6400 et seq.) and are statutorily authorized to collect and dispose of solid

---

*See footnote, *ante,* page 87.

waste (*id.*, § 6518.5). In doing so, "they exercise a portion of the police power of the state within their district boundaries," which is superior to the police powers exercised by cities or counties to the extent that they conflict. (*Rodeo, supra*, 71 Cal.App.4th at p. 1447.) "Where, as here, a general law of the state grants certain powers to sanitary districts within their boundaries, the county or city may not exercise its police power to override those district powers, because such action would be in conflict with the general laws of the state." (*Ibid.*) The county's attempt to do so was therefore void. (*Id.* at pp. 1449-1450.)

The same reasoning applies here. Like the districts in *Rodeo*, the District here is a creature of state law and is exercising the authority conferred by state law to collect and treat sewage. (Health & Saf. Code, § 6512, subd. (a).) Any attempt by the City to exercise its police powers in a way that limits the District's statutory authority conflicts with state law and is void.

By imposing the various conditions on the District's right to collect sewage within the Area, the City's policy conflicts with Health and Safety Code section 6512, subdivision (a). Accordingly, the policy is void. The trial court did not err by directing the City to vacate its policy and to enjoin the City from interfering with the District's exercise of its statutory authority.

In resisting this conclusion, the City makes four arguments. None have merit.

First, the City seeks to distinguish *Rodeo* by arguing that the rule in that case applies only when a city attempts to interfere with a sanitary district's existing sewage collection operations, and that here "the District is *not* currently providing sewer service to properties located in the [overlapping area] . . . ." That argument fails because its factual premise is directly contrary to the trial court's express factual finding that "[t]he District has provided sewer service to the overlapping area since 1963." Not only is that finding supported by substantial evidence, but the City expressly admitted in its answer "that part of the District's sewer trunkline serves the area around where Magnolia Avenue and East Sixth Street come together," i.e., the Area. Accordingly, the purported factual distinction does not exist.

The City also contends that it is not interfering with the District's authority because the City is not seeking to force any existing connections to the District's sewers to be disconnected. Instead, the City's policy affects only those parcels of property that are not yet connected to any sewer. This argument also fails, because interference with previously established sewer service is not the only way in which the City can create a conflict. The

uncontradicted evidence here is that the District exercised its statutory authority to provide sewer services by constructing trunk lines in the streets within its boundaries (Health & Saf. Code, § 6518) and by requiring all property within its boundaries to connect to those sewers when they require sewage disposal services (*id.*, § 6520). The City's policy conflicts with the District's exercise of that authority in the future by attempting to limit the District's ability to connect to parcels of property within the Area that have not previously required sewer services.

Relying on *City of Fresno v. Pinedale County Water Dist.* (1986) 184 Cal.App.3d 840 [229 Cal.Rptr. 275], the City next argues that *Rodeo* is distinguishable because the area served by the districts in that case was unincorporated, while here the Area was annexed by the City prior to the issuance of the City's policy. It is mistaken. The result was different in *City of Fresno*, not because the area in question was within the borders of an incorporated city, but because that city was a chartered city. (*City of Fresno*, at pp. 842, 844-845.)

As *Rodeo* recognizes, that distinction is critical. (*Rodeo, supra,* 71 Cal.App.4th at p. 1449.) ■ A city charter may "provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs . . . ." (Cal. Const., art. XI, § 5, subd. (a).) With respect to its municipal affairs, a chartered city that has adopted a charter with such a "home rule" provision is thereby exempt from the "conflict with general laws" restriction of section 7, article XI of the state Constitution. (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897, fn. 1 [16 Cal.Rptr.2d 215, 844 P.2d 534].) As a result, "ordinances enacted in a charter city relating to matters which are purely municipal affairs prevail over state laws covering the same subject." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 505 [247 Cal.Rptr. 362, 754 P.2d 708].) ■ General law cities, by contrast, have no such power to override state law. Because the City is a general law city,[1] the "home-rule" exception has no application here.

Finally, the City contends that: under its police powers, a city may collect and treat sewage; a city's decision to exercise a police power in a particular way must be sustained if the decision is not arbitrary; and the City's decision

---

[1] Cities within California are classified as either chartered cities or general law cities. (Gov. Code, §§ 34100-34102; *G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1092 [93 Cal.Rptr.2d 292].) The City was initially incorporated under the general laws of the state (Deering's Ann. Uncod. Measures 1907-4 (1973 ed.) p. 21), and it has not asked us to take judicial notice that it ever changed its status by subsequently adopting a charter (see Gov. Code, § 34461).

to provide sewer services in the Area is not arbitrary. That line of reasoning misses the point. While it is true that "[a]n ordinance enacted pursuant to a municipality's police powers may be nullified if palpably unreasonable, arbitrary, or capricious" (*Waste Resource Technologies v. Department of Public Health* (1994) 23 Cal.App.4th 299, 310 [28 Cal.Rptr.2d 422]), that is not the only reason that an attempt to exercise the police power might be invalid. As discussed above, and as the City concedes, a city may exercise its police powers only to the extent that it does not conflict with state law. Therefore, even if the local legislation is otherwise valid, it is preempted and rendered void if it conflicts with state law. (*Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 897.) As explained above, the City's policy conflicts with state law by limiting the District's exercise of its statutory powers. Therefore, even assuming that the City's policy was entirely reasonable, it would still be invalid.

In summary, because the City's policy conflicts with state law, the policy is void, and the trial court properly directed the City to vacate its policy and enjoined the City from interfering with the District's exercise of its statutory authority.

C. *The District Has the Exclusive Right to Provide Sewer Service Within Its Borders.*

Although the trial court correctly determined that the City could not interfere with the District's exercise of its statutory authority, it nevertheless declared "that the Home Gardens Sanitary District and the City of Corona each have the right to provide sewer service" to the Area. In its statement of decision, the trial court explained this portion of its judgment by opining that "[t]he statutory and case law submitted by the parties provided no basis to determine that either party has rights superior to the other." In this, the trial court erred.

As explained above, our Constitution provides that state law is superior to local legislation. (Cal. Const., art. XI, § 7.) The District is exercising the power of the state, which prevails over the City's police powers to the extent that they conflict. State law authorizes the District not only to construct its sewers in any public street (Health & Saf. Code, § 6518), but also to "compel all residents and property owners in the district to connect their houses and habitations and structures requiring sewerage . . . disposal service with the sewers . . . in [the] streets" (*id.*, § 6520). Here, the District has constructed those sewers and has adopted that requirement. Its decision that it will be the sole provider of sewer service within its boundaries has the force of state law. Although the City has, under its police power, the

authority to provide sewer service to its residents in the absence of any competing authority, it must yield when, as here, the District, as the extension of the state, has decided to exercise exclusive jurisdiction within that portion of the City that is within the District.

## DISPOSITION

The judgment is modified by deleting the third paragraph and by replacing it with the following: "The Home Gardens Sanitary District has the right to prevent the City of Corona from providing sewer service to property within the territorial boundaries of the district to the extent that they overlap with those of the city." As modified, the judgment is affirmed. The District shall recover its costs on appeal.

Hollenhorst, Acting P. J., and Ward, J., concurred.