[Crim. No. 1798. In Bank.—January 8, 1914.]

## In the Matter of the Application of D. E. KEPPELMANN, for a Writ of Habeas Corpus.

MUNICIPAL CORPORATION—USE OF CITY STREETS BY GAS COMPANY— CONSTITUTIONAL RIGHT PRIOR TO AMENDMENT OF 1911 CANNOT BE IMPAIRED.—A corporation which on October 10, 1911, the date of the amendment of section 19 of article XI of the constitution, was engaged in the business of supplying the inhabitants of the city and county of San Francisco with gas and electric light, and for that purpose had laid pipes and conduits in various public streets of the city and county, had on that date a vested right to occupy parts of the streets for the purposes specified in said section 19, subject to the limitations therein contained. The right thus granted by that section was not and could not be impaired by the amendment of the section.

ID.—LIMITATIONS ON RIGHT—REGULATION BY MUNICIPALITY.—Such constitutional grant was not absolute, but was in terms made sub-

ject to the "direction of the superintendent of streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages," and upon the further condition that the municipality should have the right to regulate charges.

ID.—SAN FRANCISCO—PERMIT FROM BOARD OF PUBLIC WORKS—APPROVAL OF APPLICATION BY CITY ENGINEER—DEPOSIT FOR COSTS OF INSPECTION.—The city and county of San Francisco, under the powers so reserved to it, had authority by ordinance to require such a corporation, before making any excavation in a public street, to obtain from the board of public works, after an application therefor filed with and approved by the city engineer, a written certificate that it was entitled to make the excavation, and to compel it to make a deposit to cover the cost of inspection and of restoring the street to its original condition, together with incidental expenses in connection therewith.

ID.—MANDATORY DUTY OF BOARD OF PUBLIC WORKS—MINISTERIAL DUTIES OF CITY ENGINEER.—Under the ordinance in question the city engineer's duties are purely ministerial, and the board of public works, upon a proper showing, has no discretion to grant or refuse a certificate. Its duty to issue it is mandatory.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, for Petitioner.

Percy V. Long, City Attorney, and Jesse H. Steinhart, Assistant City Attorney, for Respondent.

SLOSS, J.—A writ of *habeas corpus* was issued on the application of D. E. Keppelmann, who was held in custody on a charge of violating a certain ordinance of the city and county of San Francisco. The validity of the ordinance is the single question for decision.

The petitioner is an employee of a corporation which prior to October 10, 1911, was, and still is, engaged in supplying the inhabitants of the city and county with gas and electric light. For that purpose it had laid pipes and conduits in various public streets· of the city and county. One of the streets so occupied by it prior and subsequent to said tenth day of October, 1911, was Sixth Street, between Stevenson

and Jessie streets. On the twenty-fourth day of March, 1913, the petitioner, acting for said corporation, made an opening in the surface of said part of said Sixth Street, for the purpose of installing a service-pipe connection with the pipe and conduit there existing and maintained. He took this action, as was charged, without first obtaining from the board of public works a certificate that he or his employer was entitled to make the opening. The ordinance requiring such certificate was approved March 3, 1913. Its provisions, so far as they are material here, are as follows: Section 1 makes it unlawful for any person, firm, or corporation to make any excavation in or under the surface of any public street for the installation, repair, or removal of any pipe or conduit without first obtaining from the board of public works a written certificate that such person, firm, or corporation is entitled to make such excavation, and making a deposit to cover the cost of inspection and of restoring such street to its original condition, together with the incidental expenses in connection therewith. The said section further provides that the board of public works, before issuing such certificate, shall require: 1. A written application, showing the name and address of the applicant, the location and approximate area of the proposed excavation and the purpose for which it is to be made and used; 2. A plat showing such location (except in cases of service corporations); 3. That the applicant show legal authority to occupy and use the street; and, 4. That all material to be used in the excavation be on hand before the excavation is begun. The board is also authorized to adopt such regulations as it may deem necessary for the location, size, and depth of such excavations. Section 3 provides that when an application and plats comply with the ordinance and regulations of the board "the application and . . . plats shall be approved by the city engineer's office." The application and plats are to be filed with the board of public works, together with deposits ranging from thirty cents to ten cents per square foot of surface to be excavated, the amount varying according to the character of the pavement. Persons or corporations are permitted to maintain a general deposit of two thousand five hundred dollars in lieu of special deposits for each excavation. When the foregoing conditions have been complied with, the board of

public works, it is provided in section 4, "shall issue a certificate in writing which shall be evidence of the right of the person, firm, or corporation therein named to make such excavation." Section 24 makes the violation of any provision of the ordinance a misdemeanor.

As has been said, the petitioner's employer was in occupation of the part of Sixth Street in question on October 10, 1911, the date on which section 19 of article XI of the constitution was amended. It had, therefore, on that date, a vested right to occupy such part of the street for the purposes specified in said section 19, and subject to the limitations therein contained (*People* v. *Stephens,* 62 Cal. 209; *In re Johnston,* 137 Cal. 115, [69 Pac. 973]). The right thus granted was not and could not be impaired by the amendment of the section of the constitution. (See *Western Union Telegraph Co.* v. *Hopkins,* 160 Cal. 106, [116 Pac. 557]; *In re Russell,* 163 Cal. 668, [Ann. Cas. 1914A, 152, 126 Pac. 875].)

But the constitutional grant was not absolute. It was in terms made subject to the "direction of the superintendent of streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages," and upon the further condition that the municipality should have the right to regulate charges. The ordinance before us does not transcend the scope of the powers thus reserved to the municipality. It recognizes the pre-existing right of persons or corporations engaged in the businesses specified in the constitution to occupy the streets. The city engineer's duties are ministerial merely. He must approve an application from such person or corporation when the application complies with the regulations imposed by the ordinance and by the board of public works. Nor has the board a discretion to grant or refuse a certificate. Upon a proper showing the duty to issue the certificate is mandatory. Compliance with such duty could doubtless be enforced by appropriate judicial proceeding. But, in order to protect the streets against unwarranted intrusion by persons not entitled to excavate them, and to secure the municipality against damage to its streets, the ordinance requires evidence of the right and a deposit to cover damages. These are legitimate regulations of the right within the limitations expressed in the constitution. The right to occupy

the streets being subject to the direction of the officer in control of such streets (i. e., in the city and county of San Francisco, the board of public works), it is a proper exercise of such power of direction to require any one who seeks to make excavations to show that he is one of those having the constitutional right to enter and excavate. In the absence of such showing, and the certificate issued thereon, it would be impossible for the officers of the city or any one else to know whether any attempted excavation of the streets was being undertaken by persons authorized to occupy the streets or by mere trespassers.

So, too, the requirement of a deposit to cover the cost of restoring the streets and the expense of inspection, is to be sustained under the constitutional grant to the municipality of power to make regulations "for damages and indemnity for damages." Certainly it was never intended to grant to purveyors of water or light the privilege of destroying the pavements of a city, without reimbursing the city for the damage caused. Their right to occupy the streets has always been understood to be subject to the obligation to restore the surface of the street to its original condition. The exacting of a deposit is a reasonable method of securing such restoration.

The petitioner's main reliance is upon *In re Johnston*, 137 Cal. 115, [69 Pac. 973]. In that case an ordinance of the city of Pasadena, prohibiting the laying in the city streets of pipes for gas or water without first obtaining a permit from the superintendent of streets was held to be in violation of the constitution and invalid. The ordinance appears to have been construed (see page 120 of 137 Cal.) as asserting a right on the part of the municipality to grant or refuse a permit. In fact, it appeared that the corporation which desired to open the street there involved had made a proper application, and had offered to comply with all of the conditions and requirements imposed by law, but that the permit had nevertheless been refused. An ordinance which assumes to make the exercise of the constitutional right subject to the discretion of city officials is clearly open to the objection that it imposes an unwarranted limitation upon the constitutional grant. But, as we have said, the ordinance before us is not open to this interpretation. Under the San Francisco en-

actment, the applicant has an absolute right to the certificate upon complying with the terms of the ordinance and such proper regulations as may be adopted under it. All that he needs to do is to show his right and to deposit the amount fixed by the ordinance.

It may be remarked, further, that in the Johnston case the corporation seeking to open the street had done everything to entitle it to a permit. Such permit being refused, it proceeded to exercise the right which it had under the constitution. It may be that an unwarranted refusal of a certificate would authorize the applicant to open the streets without first compelling, by writ of mandate, the issuance of the certificate. Here, however, the petitioner did not base his claim upon any refusal of a certificate. He was undertaking to make an excavation without any prior attempt to comply with the ordinance which required him to obtain a certificate, and entitled him to such certificate upon proper showing.

The writ is discharged and the petitioner remanded.

Shaw, J., Angellotti, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.

MELVIN, J. dissenting:—I dissent: I can see no essential difference between this case and *In re Johnston* 137 Cal. 115, [69 Pac. 973], nor do I agree with the statement in the prevailing opinion that under the ordinance of San Francisco the board of supervisors has no discretion in granting or refusing the certificate for which that ordinance provides. The very provision that a permit must be asked for is one which involves the exercise of discretion by the granting power. The Johnston proceeding dealt with the vested rights of a public service corporation which had laid its pipes in a public street of a city under the authority of section 19 of article XI as it existed prior to the recent amendment. The ordinance there under analysis was very similar to the one here involved. Like this one, it required a written application setting forth the size and character of the proposed excavation and the purpose for which it was to be used. After compliance with this requirement and such ordinances of the city as were then in existence or might thereafter be passed regulating the tearing up or excavation of public streets or places, the ap-

plicant would be entitled to a permit from the superintendent of streets authorizing the excavation described in the application. There was another ordinance of the city of Pasadena, in which Johnston's alleged violation of the law occurred, requiring that an indemnity bond in the sum of five hundred dollars be filed as a prerequisite to a permission from the superintendent of streets for any person to excavate any portion of a public street. After quoting the provisions of the section of the constitution then in force, and pointing out the fact that the municipality could do no more than prescribe general and uniform regulations ''for damages and indemnity for damages,'' applicable to all who might desire to exercise the privilege of occupying the streets under constitutional grant, this court held the ordinance invalid and released the petitioner Johnston, who had been charged with a violation thereof. On page 120 of the opinion we find this language: ''When the sovereign authority of the state, either in its constitution or through its legislature, has created a right and expressed and defined the conditions under which it may be enjoyed, it is not within the province of a municipality where such right is sought to be exercised or enjoyed to impose additional burdens or terms as a condition to its exercise. The constitution does not authorize the municipality to require a permit as a condition upon which the pipes may be laid in its streets, and its claim of a right to require a permit includes the right to refuse one, and the right to annex one condition to the exercise of the privilege implies the right to annex others, which may at least impair, if not in fact amount to a denial of its exercise.''

Respondent's counsel insist that the ordinance under review here is a proper exercise of the police power. The same argument was presented in the Johnston case, but this court said: ''The ordinance in question is not an exercise of the police power, nor can it be justified under that authority. The exercise by a municipality of the police power over its streets is limited to the protection of the public in their use of the streets, and does not include a limitation upon their use for any legitimate purpose. The highways of a state, including the streets in its cities, are under the control of the people of the state, and, in this state, the people have declared in their constitution that the streets of a city may be

used for laying pipes therein for supplying its inhabitants with gaslight. Under the provision that the work shall be done 'under the direction of the superintendent of streets,' ample protection is afforded to the inhabitants of the city against any unnecessary encroachment or hindrance in their use of the streets.''

The requirement for a deposit to cover expenses and detriment caused to the street by making an excavation is one entirely beyond the power of the supervisors as defined by the opinion in the Johnston case. If a majority of the justices of this court wish to declare *in terms* that *In re Johnston,* 137 Cal. 115, [69 Pac. 973], is no longer a correct declaration of the law I shall not dissent, but I feel impelled to do so now because I believe that the opinion in that proceeding and the one prepared by Mr. Justice Sloss in this are in conflict upon the fundamental question involved in each.

Rehearing denied.