[S. F. No. 18029. In Bank. March 3, 1950.]

CENTRAL CONTRA COSTA SANITARY DISTRICT (a Public Corporation), Petitioner, v. SUPERIOR COURT OF CONTRA COSTA COUNTY et al., Respondents.

Wagener & Brailsford, W. H. Brailsford, Jr., and Robert W. Harrison for Petitioner.

Tinning & DeLap and Archibald B. Tinning for Respondents.

EDMONDS, J.—The Central Contra Costa Sanitary District operates a sanitary sewage system in Contra Costa County, embracing an area of approximately 30,000 acres with

a population of about 43,000. The facilities now in use include a treatment plant which daily handles some 3,000,000 gallons of sewage and a main trunk pipe line 24 miles in length. Presently under construction are 115 miles of collecting sewer systems.

In connection with the construction in the Walnut Creek area, the Health Officer of Contra Costa County certified to the governing board of the Sanitary District that investigation had disclosed unsanitary, unhealthful, and dangerous conditions. On the basis of that report, the local district, in accordance with section 5000 et seq., of the Streets and Highways Code, awarded a contract for the construction of a network of sewer pipes.

Through negotiation, perpetual and temporary easements or rights of way were obtained across more than 90 per cent of the land in private ownership under which it is necessary to lay the pipes. In connection with the construction work, easements or rights of way over the land of Anne Fish Burgess are required. The present controversy has arisen in connection with the action to condemn such easements.

Following the commencement of the action, the Sanitary District filed a notice of a motion for an order of immediate possession upon the deposit of an amount to be fixed by the court. In support of the motion, an affidavit of an appraiser was filed in which he declared that $607 is the reasonable market value of the easement sought. There is no controversy as to the sufficiency of this proposed deposit. The motion was denied upon the ground that the Sanitary District is not one of the public corporations specifically named in article I, section 14, of the Constitution of the State of California, or a "similar public corporation" within the meaning of that section. The decision was also placed upon the ground that the use for which the real property is sought to be taken is not one for which immediate possession of an owner's land may be had, it not being required for a right of way, or for use as a reservoir, by a corporation authorized by law to obtain immediate possession.

Article I, section 14, of the Constitution, provides: "Private property shall not be taken or damaged for public use without just compensation having first been made . . . and no right of way or lands to be used for reservoir purposes shall be appropriated to the use of any corporation, except a municipal corporation or a county or the State or metropolitan water district, municipal utility district, municipal water

district, drainage, irrigation, levee, reclamation or water conservation district, or similar public corporation until full compensation therefor be first made . . . in any proceeding in eminent domain brought by [one of the above corporations '. . . or similar public corporation'] . . . the aforesaid . . . may take immediate possession and use of any right of way or lands to be used for reservoir purposes . . . upon . . . giving such security . . . as the court in which such proceedings are pending may direct. . . .''

By the present proceeding, the Sanitary District seeks a writ of mandate directing the superior court to make an order (1) fixing the amount of the sum reasonably adequate to secure Anne Fish Burgess payment of just compensation for the condemnation of her property, and (2) giving petitioner the immediate possession and use of the easements. The ground relied upon as justifying such relief is that immediate possession of the easement is required in order to correct a dangerously unsanitary condition as soon as possible.

In response to the petition, Anne Fish Burgess, the real party in interest, filed a demurrer and answer pleading: (1) that the Sanitary District has an adequate remedy at law and does not need immediate possession of the easement; (2) that it does not have a legal right to such possession, since it is neither one of the public corporations specified in article I, section 14, nor is it ''. . . a similar public corporation. . .''; (3) that there are no unhealthful or unsanitary conditions requiring abatement; and (4) that adequate drainage facilities now exist.

■ The allegations as to the lack of unsanitary conditions and the adequacy of present drainage facilties are irrelevant in this proceeding. These questions will be determined by the trial court in the condemnation action. The value of the easement as stated by the appraiser has not been challenged, and in the event of ''. . . an adjudication that there is no necessity for taking the property . . .'' (Const., art. I, § 14), the landowner will be protected by the deposit required of the Sanitary District.

■ The ruling denying the motion for immediate possession is not an appealable order (Code Civ. Proc., § 963), and the fact that eventually the Sanitary District may obtain possession of the Burgess land by a judgment is no substitute for the right to immediate occupancy. For that reason, the petitioner has no adequate remedy other than this proceeding.

The essence of the Sanitary District's position is that it is entitled to the immediate possession of property which is the subject of a condemnation action because it shares in common with the specifically enumerated public corporations the power to ". . . acquire [and] construct . . . storm water drains and storm water collection, outfall and disposal systems. . . ." (Health & Saf. Code, § 6512.) It may construct a sewage system [municipal utility districts], provide for drainage [irrigation districts], and generally protect the public health. A further point relied upon is that an easement for a sewer pipe is a ". . . right of way . . ." within the meaning of those words as used in article I, section 14, of the Constitution.

The argument of Miss Burgess is that under the principle of *ejusdem generis* a sanitary district is not ". . . a similar public corporation . . ." because the one factor common to those enumerated in the Constitution is the control, development and supply of water. The Sanitary District, she asserts, does not have this power.

■ The constitutional provision, as amended, specifically includes drainage, irrigation, levee and reclamation districts, extending to them the privilege of immediate occupancy of condemned land pending the final judgment in an eminent domain proceeding. The powers of municipal corporations, counties and reclamation districts are not limited to the control of water; the general purpose of all of these agencies is the protection of the public health. As to such districts, it has been recognized that there is a need for immediate occupancy of land which is being condemned. Under the rule of *ejusdem generis,* the necessity for such occupancy is enough to bring sanitary districts within the words ". . . similar public corporation. . . ."

■ But if the public health factor is not sufficient, a sanitary district is also specifically empowered to construct storm water drains and storm water collection, outfall and disposal systems (Health & Saf. Code, § 6512), while the municipal utility districts share in common with it the power to construct sewer systems. It would indeed be a narrow construction of the words ". . . similar public corporation . . ." to distinguish, by so fine a line, between the authority of a sanitary district which controls storm water in order to avoid pollution of drinking water and that of a water conservation district, which guards against the damage of storm waters by the maintenance of irrigation facilities. To accomplish their purposes, all of the public corporations named must

construct pipes across private lands, and all of them equally need to expedite construction by immediate occupancy of property upon which facilities are being built.

 Much reliance is placed upon the argument sent to the voters in support of the proposed amendment. This statement enumerated metropolitan water districts, municipal utility districts, municipal water districts and water conservation districts, but did not specifically mention sanitary districts. From this analysis of the measure, it is contended that a sanitary district was not intended to be a "similar public corporation." But this omission is no basis for reasoning that the right of immediate possession was not to be extended to a district not expressly named.

Moreover, some of the argument to the voters supports the construction of the amendment as including a sanitary district. The voters were told: "Since the sovereign agency must be entitled to eventually obtain the required property, it has long been recognized that the practical and sensible thing was to allow the public agency to take possession at once so that construction work and development would not be delayed." And a further statement of the purposes of the amendment reads: "This amendment does away with the unfair discrimination which now exists between districts performing the same functions."

For these reasons a writ of mandate will issue requiring the superior court to vacate its previous order and to fix the amount of the deposit necessary to secure to Anne Fish Burgess the prompt payment of just compensation upon the condemnation of her property. Upon such deposit, the court shall make an order giving the petitioner the immediate possession and use of the easement or right of way sought to be condemned.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent. The majority opinion reads words into a constitutional provision when there is no justification therefor on any ground of statutory construction. The constitutional provision is meticulous in specifying by name those public agencies which may be given immediate possession of property sought in eminent domain proceedings. A sanitary district is not one of such agencies.

Prior to its amendment in 1918, there was no provision for immediate possession in the Constitution. In 1918, the provi-

sion was added which authorized such possession where the action was by the state, county, municipal corporation, or a drainage, irrigation, levee, or reclamation district, and a right of way was sought. The amendment in 1934 retained the above specified agencies and added: "metropolitan water district, municipal utility district, municipal water district and water conservation district" and the general clause "similar public corporation." Thus the consistent practice has been to *specifically name* or describe the public agencies that have such power. For this court to add another distinctly named and constituted agency is manifestly out of harmony with that practice and the clear intent of the electorate.

The argument to the voters in favor of the 1934 amendment expressly stresses the limited character of the agencies and the essential factor that they must be agencies having to do with water resources. It was then urged: "1. To extend to metropolitan water districts, municipal utility districts, municipal water districts and water conservation districts the same privilege and authority as now vested in irrigation districts, drainage districts, levee districts, reclamation districts, municipalities, counties and the State—namely, the right to take possession of property sought for rights of way immediately upon payment into court of the amount fixed by the court as compensation. . . .

"The recent development of the State, especially in the way of *water resources,* has brought about types of districts which are especially designed for their particular purpose and which handle projects for irrigation, reclamation, levee protection, water conservation, etc., that can not well be handled by the city or even by the county. These districts in some instances embrace parts of several counties and appear to be the only suitable agency for handling their particular projects.

"It has long been the policy of this State, approved by the people of California, that sovereign agencies such as the State itself, or counties or cities, should have the right, when lands are required for rights of way such as roads and highways to take immediate possession upon payment into court of the amount fixed by the judge to cover any award by the jury as the value of the land. This same authority, so far as concerns land for rights of way, also now exists in the case of irrigation, drainage, levee and reclamation districts. . . .

"Likewise, the authority which is found necessary for irrigation, drainage, levee and reclamation districts should obviously likewise be available to the *new and recently created*

types of districts, such as metropolitan water districts, municipal utility districts, municipal water districts and water conservation districts.

"This amendment does away with the unfair discrimination which now exists between districts *performing the same functions*.

"This amendment simply extends the policy that has long been recognized, not only as desirable, but as absolutely necessary in order that government may carry on its functions. Unless this amendment is adopted it will be possible for one individual to hold up in litigation for many years the construction of essential works for the public's development or utilization of water." [Emphasis added.]

The purported "catch-all" phrase, "similar public corporation," cannot extend to sanitary districts for the agencies specifically listed either do not possess attributes similar to such districts or are concerned with serving a different purpose. It is conceded that the general phrase may embrace only such agencies as have characteristics common with the ones named. It is not contended that a sanitary district is similar to or belongs in the same class as the state, a county or municipal corporation. The common quality of all of the other named agencies, with the possible exception of municipal utility districts, has to do with the conservation and distribution for use of water, a vital resource of the state. A sanitary district, on the other hand, is primarily concerned with the disposal of sewage, a subject pertaining to the public health. Only incidentally is it interested in water control, that is, disposal of drainage waters which is naturally pertinent to its function for it may use the same facilities for both sewage and flood waters.

It is spurious thinking to reason, as does the majority, that all the agencies above named have the common general factor of public health. In a very general way there may be a connection with health, but at most it is remote. The main and primary function still remains—the conservation and use of water.

Further, in connection with storm or drainage waters, the majority opinion refers to the fact that municipal utility districts may, like sanitary districts, maintain sewage systems, but that is a similarity common as between only *one* of the named agencies and such district. The rule requires a common primary similarity applicable to all. The control of storm waters by the named agencies is for the purpose of conserving

and using water. That is the chief purpose. Even if protection of property is also a purpose, we have no similarity in sanitary districts whose *main* function is sewage disposal, the storm water factor being only incidental and not with the aim of conserving or utilizing water.

There are other public agencies which deal with the disposal of water. One of these is a mosquito abatement district, as it is a well known fact that mosquitoes breed in pools of stagnant water. It is the function of such a district to drain such pools or inoculate the water therein so as to eradicate the mosquito larvae. The obvious purpose of destroying mosquitoes is the conservation of public health—a very important function. Yet I seriously doubt if even the majority of this court would go the absurd length of holding that the framers of the amendment to the Constitution intended that a mosquito abatement district be given the power to take immediate possession of property it sought to acquire in connection with its abatement program. I can see no basis for distinction between such a district and the sanitary district here involved.

In addition to the obvious objection to amending the Constitution by judicial edict as the majority are doing in this case by including a sanitary district within the ambit of section 14 of article I of the Constitution, there are other reasons why public agencies not specifically empowered by the Constitution to do so should not be given the power to take immediate possession of private property before obtaining a final order of condemnation in an eminent domain proceeding and paying the amount of compensation and damages awarded by a jury. In this connection, we may take judicial notice that there are many public agencies which are limited in the amount of money available to them in the performance of the functions which they are authorized to perform. It is, therefore, not beyond the realm of probability that such an agency may take immediate possession of property upon a preliminary showing of value and not be able to respond in the amount of compensation and damages which will subsequently be awarded by the jury in the trial of the eminent domain proceeding. In such event, the public agency would have the property without the payment of the just compensation and damages to which the owner is entitled under both the federal and state Constitutions. In this connection, cases have come under my observation where the amount awarded by a jury as compensation and damages for property taken has exceeded

by many thousands of dollars the amount paid into court upon the granting of an order authorizing the taking of immediate possession. For this reason, it is obvious that the people of this state should have the opportunity to decide what public agencies should be given the power to take immediate possession of private property to be devoted to a public use under the supervision of such agencies. I think it is clear that the people of this state have not thus far expressed their willingness to confer such power upon a sanitary district and the holding of the majority to the contrary is a palpable distortion of the plain language used to express the intention of those who drafted the 1934 amendment and the voters who adopted it.

While I believe in liberal construction of constitutional and statutory provisions which seek to promote the public interest and welfare, I do not believe in resorting to judicial legislation to accomplish this result.

I would, therefore, deny the writ of mandate sought in this proceeding.

Schauer, J., concurred.