[No. A033386. First Dist., Div. Four. May 20, 1987.]

WEST BAY SANITARY DISTRICT, Plaintiff and Respondent, v.
CITY OF EAST PALO ALTO et al., Defendants and Appellants;
MENLO BUSINESS PARK, Intervener and Respondent.

**COUNSEL**

Robert W. Johnson, Tesfaye W. Tsadik and Stuckey & Johnson for Defendants and Appellants.

William D. Esselstein and Robertson, Alexander, Luther, Esselstein, Shiells & Wright for Plaintiff and Respondent.

Edgar B. Washburn, Ronald E. Altman and Washburn & Kemp for Intervener and Respondent.

**OPINION**

**POCHÉ, J.**—Defendants and appellants, City of East Palo Alto (City) and Jesse Smith III, Director of Public Works for City, appeal from a judgment issuing a peremptory writ of mandate compelling them to issue an encroachment permit to plaintiff and respondent, West Bay Sanitary District (WBSD). We affirm.

## The Proceedings

WBSD, a public agency, is a sanitary district organized under the Sanitary District Act of 1923. (Health & Saf. Code, § 6400 et seq.)[1] WBSD's territory is located entirely within San Mateo County, and a portion of it lies within the city limits of East Palo Alto.[2]

In May of 1985, the board of WBSD authorized the commencement of the "Kavanaugh-O'Brien Sewer Main Replacement Project," which called for, inter alia, the excavation and replacement of an existing sewer line on Kavanaugh Drive in City. The sewer line would service industrial facilities which are located outside City limits such as intervener Menlo Business Park. Thereafter WBSD formally applied for an encroachment permit from City. The City Council voted to approve the application for an encroachment permit, but conditioned that approval on amendment by the WBSD board of its Code of General Regulations to provide for a new method of approval of wastewater discharge permits.

Under the terms of the proposed amendment, WBSD would be prohibited from approving a wastewater discharge permit without first giving "affected public agencies ... an opportunity to review and comment upon the proposed permit ...." Thus, prior to the issuance of a permit, WBSD would be required to inform any public entity as to which "the wastewater ... will be discharged in or conveyed through," of the wastewater constituents proposed to be discharged and any conditions WBSD intended to place on the permit. The public agency could then comment on the proposed permit and request either changes by the requesting party or that the permit not issue at all. If the manager of WBSD disagreed with the agency's request, then the affected entity has the right to appeal to the board. If the board rejected the appeal, the matter was to be submitted to binding third party arbitration.

The board of WBSD refused to adopt the amendment and commenced the instant mandate proceeding to obtain the encroachment permit without the condition requested by City. The trial court agreed with WBSD that City had a clear, present and ministerial duty to issue the encroachment permit without the condition and ordered City to do just that. This appeal followed.

Under Code of Civil Procedure section 916, City's appeal automatically stayed the judgment and hence the completion of the project. WBSD filed

---

[1]Unless otherwise indicated all subsequent statutory references are to the Health and Safety Code.

[2]Also located within WBSD territory are Menlo park, Atherton, Portola Valley, Woodside, Redwood City, and the County of San Mateo.

an ex parte application for relief from the automatic stay (Code Civ. Proc., § 1110b) alleging that the present sewer was overflowing daily. The trial court granted the stay in order that the project could continue but restricted any new industrial hookups pending a further hearing. At that point Menlo Business Park moved to intervene in the action on the ground that it would suffer irreparable damage from a delay in connecting to the sewer. The trial court granted the motion to intervene and vacated the restriction on new wastewater permits, although it gave City an opportunity to petition this court for a writ of supersedeas. We denied the petition.

## REVIEW

 The question is whether a municipality may condition[3] issuance of an encroachment permit in a manner which gives it in effect a veto over permit determinations made by a sanitary district for the discharge of industrial wastewater.[4]

The governing body of a sanitary district organized under the Sanitary District Act of 1923 is its board, which is the only entity authorized to exercise "all district powers." (§ 6481.) Included within its powers is the power to adopt general regulations. (§§ 6490-6491.3, 6521.) Within its geographical boundaries, the board may "acquire, plan, construct, reconstruct, alter, enlarge, lay, renew, replace, maintain, and operate such . . . sewers, drains, septic tanks, and sewerage collection, outfall, treatment works and other sanitary disposal systems, . . . as in the judgment of the board shall be necessary and proper, . . ." (Former Pub. Contract Code, § 20802 (repealed by Stats. 1986, ch. 195, § 96), see now § 6512 (added by Stats. 1986, ch. 195, § 39).) It is further authorized to "lay its sewers and drains in any public street or road in the county, and for this purpose enter upon it and make all necessary and proper excavations, restoring it to proper condition." (§ 6518.) The only statutory limitations on the exercise of this power are: (1) that the work of restoring and repairing the public street be accomplished under the supervision of the affected public entity; and (2) the public entity's consent first be obtained. (*Ibid.*)

---

[3]In other words, is this exaction a valid one? (See generally, *Exactions: A Controversial New Source For Municipal Funds* (1987) 50 Law & Contemp. Probs. 1.)

[4]Because the sewer project has been completed, WBSD requests us to dismiss City's appeal as moot. We decline to do so. First we note that to the extent City is successful on appeal, it could attempt to condition the issuance of encroachment permits in a like manner in the future. We further note that there is some public interest involved in the question presented, and it might recur in the future. For each of these reasons, therefore, we decline to find the instant appeal to be moot. (Cf. *Diamond* v. *Bland* (1970) 3 Cal.3d 653, 657 [91 Cal.Rptr. 501, 477 P.2d 733] [case should not be considered moot because of likelihood of recurrence of conflict between the parties]; *County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555] [case not moot where issue is one of general public interest, and if not resolved will generate uncertainty].)

██ City initially contends that the Legislature has thus vested in it the power to withhold consent or to impose restrictions on the proposed excavation. We agree that City has the power to require a sanitation district to obtain a permit before excavating city streets and that City has the power to impose reasonable restrictions upon the excavation. (See, e.g., *Matter of Application of Keppelmann* (1914) 166 Cal. 770, 773-774 [138 P. 346]; 10 McQuillin Municipal Corporations (3d ed. 1981) ch. 30, § 30.50, pp. 708-709.) City further suggests that it has the power to determine whether the proposed excavation will endanger the public health and safety. Again we have no disagreement with the general proposition. City thus maintains that the conditions it seeks to impose upon the encroachment permit are nothing more than a reasonable exercise of its police power intended to protect the safety, health and general welfare of its citizens. This latter argument proves to be a non sequitur.

City is not using its police power in the instant case to protect the health, safety and welfare of its citizens from the proposed excavation. As far as this record demonstrates, City has no objection to the manner in which WBSD intends to excavate Kavanaugh Drive; indeed, it does not appear that City has any objection to the replacement of the sewer line under Kavanaugh Drive. Thus this is not the imposition of a reasonable restriction by a municipality upon a proposed excavation in order to protect its citizen's health and safety. (Cf. *Matter of Application of Keppelmann, supra,* 166 Cal. 770 [governing entity entitled to regulate location, size and depth of excavations].) Instead, City is attempting to control WBSD's industrial wastewater discharge permit process, a matter which is unrelated to and beyond the scope of City's power to regulate WBSD's excavation of City's streets.

By conditioning the issuance of the encroachment permit on a requirement that the board of WBSD amend its Code of General Regulations to provide for a new procedure for the issuance of wastewater discharge permits City usurps powers which the Legislature has vested exclusively in the board of the sanitary district. All district powers are vested in the board (§ 6481), not in governmental entities such as City which fall within the sanitary district's territory. The power to grant or deny connections to the sanitary district's wastewater collection system is vested exclusively in the district. (§§ 6520-6520.2.) The power to make regulations concerning the use of district facilities is vested exclusively in the district as well. (§ 6491.1.) In fact, the Legislature has vested the district with the power to adopt regulations concerning every aspect of the operation, except to the extent such regulations "conflict with the laws of this State." (§ 6521.) This attempted usurpation of such powers by City is violative of the legislative mandate that these powers are vested in and exercisable exclusively by WBSD.

City's reliance on cases such as *Longridge Estates* v. *City of Los Angeles* (1960) 183 Cal.App.2d 533 [6 Cal.Rptr. 900] for the proposition that "the establishment and maintenance of a sewer system is well within the police power of City" is misplaced. At issue in *Longridge Estates* was whether a city ordinance which required subdividers to pay an outlet sewer charge prior to recording the final subdivision map violated the Subdivision Map Act. In finding the ordinance a valid exercise of municipal powers the court noted, "Construction, maintenance, and repair of sewers and storm drains may be provided by ordinance and sustained as a valid exercise of police power in the interest of public health and as an incident to constructing and maintaining streets." (*Id.* at p. 539.) Were City in the business of constructing, maintaining, or repairing sewers as was the City of Los Angeles, City's reliance on *Longridge Estates* might prove useful. However, because it is WBSD not City which performs those functions, *Longridge Estates* provides no support for City's position.

Nor is City aided by *Petition East Fruitvale Sanitary Dist.* (1910) 158 Cal. 453 [111 P. 368]. In this case, the territory covered by a sanitary district was annexed entirely by the City of Oakland. Thereafter the city took the position that the sanitary district no longer had the power to issue bonds or even construct a sewer. Noting that the city had the identical powers of the sanitary district, the reviewing court agreed with the City of Oakland: "It is a well-settled doctrine that 'there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges.' [Citations.]" (*Id.* at p. 457.) The court thus held that by virtue of the annexation, the annexing entity, the city, took over the functions of the annexed entity, the sanitary district, thereby extinguishing the sanitary district and vesting its power, property, and duties in the City of Oakland. (*Id.* at pp. 457-461.)

City does not explain how *Fruitvale* helps its case. At best, the rule of *Fruitvale* applies only where all of the territory of a sanitary district is annexed by a city. (See, e.g, *Trimont Land Co.* v. *Truckee Sanitary Dist.* (1983) 145 Cal.App.3d 330, 343 [193 Cal.Rptr. 568] ["In [*Fruitvale*], the court held that a sanitary district was automatically dissolved when it was annexed in its entirety to the City of Oakland"]; *Dickson* v. *City of Carlsbad* (1953) 119 Cal.App.2d 809, 812-814 [260 P.2d 226].) Here, City is but one of many which exist within the district's territory. (See fn. 2, *ante.*) That City became incorporated in 1983 does not change the picture; that incorporation did not result in annexation of WBSD. Thus, we do not read *Fruitvale* as giving City the power it wishes to exercise here.

For the foregoing reasons, we conclude that the trial court properly determined that City lacked the power to require WBSD to amend its Code of

General Regulations as a condition of the issuance of the encroachment permit. Therefore, it properly issued a writ of mandate directing City to issue the permit without the condition. (Code Civ. Proc., § 1085; cf. *C-Y Development Co.* v. *City of Redlands* (1982) 137 Cal.App.3d 926, 934 [187 Cal.Rptr. 370] [writ of mandate will lie to compel issuance of building permit where the sole reason for denying it is an invalid one].)

The judgment is affirmed. Respondents and intervener to recover their costs on appeal.

Anderson, P. J., and Channell, J., concurred.