[No. A082232. First Dist., Div. Five. May 10, 1999.]

RODEO SANITARY DISTRICT, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY, Defendant
and Respondent.

[No. A082245. First Dist., Div. Five. May 10, 1999.]

MT. VIEW SANITARY DISTRICT, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY, Defendant
and Respondent.

## COUNSEL

David J. Levy; Marchmont J. Schwartz; and Bryce C. Anderson for Plaintiffs and Appellants.

Victor J. Westman, County Counsel, and Bernard Knapp, Deputy County Counsel, for Defendant and Respondent.

## OPINION

STEVENS, J.—In these consolidated appeals, the appellant sanitary districts contend the Board of Supervisors of Contra Costa County, within which the districts lie, could not forbid them from continuing to carry out their traditional function of collecting and disposing of solid waste. The dispositive issues presented are (1) whether the county's actions were a proper exercise of its police power, and (2) whether its actions were authorized by the California Integrated Waste Management Act of 1989 (Pub. Resources Code, § 40000 et seq.). The sanitary districts' contentions have merit, and we therefore reverse the trial court's judgment.

### I. FACTS AND PROCEDURAL HISTORY

The Rodeo Sanitary District and the Mt. View Sanitary District (the districts) are public corporations organized under the provisions of the Sanitary District Act of 1923 (the 1923 Act) (Health & Saf. Code, § 6400 et seq.). The districts have operated for at least the past 50 years, collecting and disposing of garbage within their respective district boundaries, which lie within unincorporated areas of Contra Costa County (the county). In 1985 and 1986, both districts entered into long-term, exclusive garbage collection contracts with Pleasant Hill Bayshore Disposal (Bayshore). Under those contracts, Bayshore was to collect garbage within the districts into the next century.

In 1989, the Legislature passed the California Integrated Waste Management Act of 1989 (the 1989 Act) (Pub. Resources Code, § 40000 et seq.), which we discuss in the next part of this opinion. In 1991, and purportedly under the authority of the 1989 Act, the county's board of supervisors

adopted a new ordinance, No. 91-31 (the 1991 Ordinance), which requires that any person providing solid waste collection or disposal services within unincorporated areas of the county must have an agreement directly with the county, not with the districts. The 1991 Ordinance also envisioned that the county and the local districts would enter into a memorandum of understanding with reference to garbage collection, but apparently any negotiations between the districts and the county proved unsuccessful.

Pursuant to the 1991 Ordinance, and despite the opposition of the districts, the county in 1996 granted to Bayshore the county's own exclusive garbage collection franchises covering the districts' service areas, and directed that all proceeds should be paid to the county, not the districts. In essence, although the districts continue to exist on paper, the county assumed the districts' major function of collecting garbage within each district.

The districts brought suit against the county, challenging these actions. It was their contention that the county had no legal authority to take over their garbage collection operations, had engaged in an inverse condemnation of the districts' operations, and had interfered with their economic relationships with Bayshore. The districts' complaints sought declaratory and injunctive relief.

Arguing it had the legal authority to supersede the districts' authority by granting exclusive franchises for garbage collection within the territories of the two districts, the county successfully obtained summary judgment. The districts brought separate timely appeals from the resulting judgments. We have ordered the districts' appeals to be consolidated for purposes of briefing, argument, and the issuance of this opinion.

II. DISCUSSION

A. *Standard of Review*

■ We review a summary judgment de novo. (*Environmental Protection Information Center* v. *Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1015-1016 [50 Cal.Rptr.2d 892].) To determine whether a summary judgment was proper we follow the same approach required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) Here, only legal issues are presented, and we simply determine whether the county was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.)

B. *The County Did Not Have General Police Power Over the Districts*

■ The districts are separate legal entities established by local voters residing within the districts pursuant to state statute, the 1923 Act. This act

specifically grants to sanitary districts the legal authority and power to collect and dispose of waste and garbage within their jurisdictional boundaries. (Health & Saf. Code, § 6518.5.)

Sanitary districts are, therefore, creatures of state law; and as public corporations, they exercise a portion of the police power of the state within their district boundaries, independent of the police power of a city or a county over unincorporated areas, in the event of a direct conflict of laws. (See *Cent. Contra Costa etc. Dist.* v. *Superior Ct.* (1950) 34 Cal.2d 845, 849 [215 P.2d 462]; *West Bay Sanitary Dist.* v. *City of East Palo Alto* (1987) 191 Cal.App.3d 1507, 1510-1512 [237 Cal.Rptr. 245] (*West Bay Sanitary*); see also Cal. Atty. Gen., Indexed Letter, No. IL 9050 (Dec. 4, 1933); 10 Ops.Cal.Atty.Gen. 13, 14 (1947); cf. also *In re Sozzi* (1942) 54 Cal.App.2d 304, 306 [129 P.2d 40].)

The state Constitution also provides that a county has the power to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*" (Cal. Const., art. XI, § 7, italics added.) County ordinances and other " '[l]ocal legislation in conflict with general law is void.' " (*People* ex. rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150] (*Mendocino*).) Where, as here, a general law of the state grants certain powers to sanitary districts within their boundaries, the county or city may not exercise its police power to override those district powers, because such action would be in conflict with the general laws of the state. (See *West Bay Sanitary, supra,* 191 Cal.App.3d at p. 1512.)

By way of illustration, in *West Bay Sanitary, supra,* 191 Cal.App.3d at pages 1509-1512, Division Four of the First Appellate District held that a city had no power to control a sanitary district's authority over wastewater discharge permits. The issuance of these wastewater discharge permits was a traditional function of the sanitary district, but the city sought to require that the district not issue such permits without first either giving notice to the city and obtaining its consent, or alternatively, pursuing the matter to arbitration before a third party. Relying on the powers granted by the Legislature to the district under the 1923 Act, this court condemned the city's attempt to exercise authority over the independent sanitary district, characterizing such action as an attempt to "usurp[ ] powers which the Legislature has vested exclusively in the board of the sanitary district." (*Id.* at p. 1511.)

Consistent with the First Appellate District's holding in *West Bay Sanitary*, persuasive California Attorney General opinions have also reasoned that a sanitary district's authority will prevail over a county's authority in the

event of direct conflict over matters within the district's jurisdiction. In one early opinion which was requested by the District Attorney of San Mateo County, the Attorney General analyzed the statutory power of a sanitary district under the 1923 Act to regulate the collection of garbage within district borders. The Attorney General concluded that San Mateo County had no right to legislate by ordinance upon the subject of dumping or depositing of garbage within the district where the sanitary district had already exercised its regulatory power on the same subject. In the words of that opinion, ". . . the county has no right to legislate upon the subject of the dumping and depositing of garbage within the exterior boundaries of a sanitary district where the district itself has legislated upon the question." (Cal. Atty. Gen., Indexed Letter, No. IL 9050, *supra.*)

Similarly, guidance from the Attorney General was sought to resolve a conflict over regulations which required fees for building inspections in unincorporated areas of Santa Clara County, which areas were also within the jurisdiction of a sanitary district. The Attorney General again concluded that, in the event of conflict, the sanitary district's regulations requiring fees for building inspections for plumbing connections would prevail over those of the county: "The sanitary districts in question are formed under the provisions of [the 1923 Act]. This is a comprehensive statute giving districts formed thereunder broad powers. . . . [¶] Section 6490 of the [Health and Safety] Code permits sanitary districts to adopt what are termed 'general regulations,' which must be published as provided by the section. . . . [¶] Such regulations or ordinances must, of course, be confined and relate to the carrying out of the powers and duties given by law to such sanitary districts. . . . [¶] These regulations, in our opinion, are paramount within their sphere in the district. That is, if a plumbing regulation should be in direct conflict with the county ordinance, the district ordinance, being a special law applying to that particular locality, will prevail over the more general county ordinance." (10 Ops.Cal.Atty.Gen., *supra,* at p. 14.)

We view the foregoing opinions of the Attorney General to be both relevant and well reasoned. (See *California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2] (*California Assn.*).) They stand for the broad proposition that the county has no general police power over a sanitary district's operations in unincorporated areas of the county, absent a specific grant of such power by the Legislature. This analysis is wholly consistent with that taken by the First Appellate District, when considering the powers of sanitary districts vis-à-vis the powers of counties and cities. (See *West Bay Sanitary, supra,* 191 Cal.App.3d at p. 1512.) ■ While opinions of the Attorney General are not binding, they nevertheless are entitled to considerable weight. " 'In the absence of controlling authority [to the contrary], these opinions are persuasive "since the

Legislature is presumed to be cognizant of the construction of the statute." ' [Citation.]" (*California Assn., supra,* 51 Cal.3d at p. 17; accord, *Joiner* v. *City of Sebastopol* (1981) 125 Cal.App.3d 799, 804-805 [178 Cal.Rptr. 299]; *Lute* v. *Governing Board* (1988) 202 Cal.App.3d 1177, 1182 [249 Cal.Rptr. 161]; *Bell Gardens Bicycle Club* v. *Department of Justice* (1995) 36 Cal.App.4th 717, 741, fn. 6 [42 Cal.Rptr.2d 730].)

By contrast, the two cases principally relied upon by the county for contrary results are not on point. In *City of Fresno* v. *Pinedale County Water Dist.* (1986) 184 Cal.App.3d 840 [229 Cal.Rptr. 275] (*Pinedale*), the issue on appeal was whether a city's annexation of a substantial portion of a water district's territory terminates the district's authority to furnish solid waste collection service to the annexed territory, following expiration of a five-year "phase-out term." There, it was ruled that a charter city could take over waste collection efforts within the district's borders, *after the city had annexed areas covered by a water district.* Critical to the result in *Pinedale* was the fact that the charter city first annexed the district, and then used its preeminent charter powers to assume the district's duties. (*Id.* at pp. 843-848.) Under former Health and Safety Code section 4260 (repealed by Stats. 1989, ch. 1095, § 19, p. 3810, now Pub. Resources Code, § 49400), and former Government Code section 66771 (repealed by Stats. 1989, ch. 1095, § 4, p. 3810, now Pub. Resources Code, § 43021), a charter city was granted the exclusive right to manage refuse collection within its borders. Consequently, the ordinance in *Pinedale* was upheld as a result of a specific statutory grant of power to cities. The present case considers neither the powers of a charter city nor a city annexation.

The Third Appellate District's decision in *Baldwin* v. *County of Tehama* (1994) 31 Cal.App.4th 166 [36 Cal.Rptr.2d 886] (*Baldwin*), also fails to address the issue under consideration here. *Baldwin* questioned whether a county was precluded from regulating groundwater because the state had preempted the field. In concluding that state law, while regulating aspects of groundwater, did not entirely exclude county regulation, the court examined various state statutes regulating water usage in the context of potential conflict between the county ordinance and state statutes. (*Id.* at pp. 172-178.) Here, we do not consider any alleged conflict as between state law and local county regulation. Rather, we consider instead the independent powers of sanitary districts relative to the police powers of other local municipal organizations. (See *West Bay Sanitary, supra,* 191 Cal.App.3d at p. 1512.)

We therefore conclude the county had no general police power to assume legal authority over the districts' operations. The districts were created and authorized by state law, in the 1923 Act, to carry out those functions. The

county's attempt to use its general police power to overrule the district's traditional legal authority over these matters was in conflict with state law, and is therefore void. (See *Mendocino, supra,* 36 Cal.3d at p. 484; *West Bay Sanitary, supra,* 191 Cal.App.3d at p. 1512.)

C. *The 1989 Act Did Not Give the County Additional Legal Authority Over the Districts*

The county next suggests that even if its general police power would not allow it to take over the districts' local garbage collection operations, the county has been granted this legal authority by virtue of the 1989 Act. It is claimed that the 1989 Act allowed the county to pass the 1991 Ordinance that authorized taking over the districts' powers to collect garbage within district boundaries.

The 1989 Act was a comprehensive reorganization of many laws regarding waste management, with amendments designed in major part to encourage recycling as an alternative to increasingly crowded landfill disposal sites. (See *Waste Management of the Desert, Inc.* v. *Palm Springs Recycling Center, Inc.* (1994) 7 Cal.4th 478, 484 [28 Cal.Rptr.2d 461, 869 P.2d 440] (*Waste Management*); *Waste Resource Technologies* v. *Department of Public Health* (1994) 23 Cal.App.4th 299, 304-305 [28 Cal.Rptr.2d 422] (*Waste Resources*); *City of Alhambra* v. *P.J.B. Disposal Co.* (1998) 61 Cal.App.4th 136, 145-146 [71 Cal.Rptr.2d 364] (*P.J.B. Disposal*); *Empire Waste Management* v. *Town of Windsor* (1998) 67 Cal.App.4th 714, 721-722 [79 Cal.Rptr.2d 262] (*Empire Waste*).) Although it has been noted that the 1989 Act is not "a model of clarity" (*P.J.B. Disposal, supra,* at p. 148, fn. 14), and although the First Appellate District has repeatedly held that the Legislature in passing the 1989 Act did not intend to displace local control over garbage collection (*Waste Resources, supra,* at pp. 307-309; *Empire Waste, supra,* at pp. 721-723), the county nevertheless asserts that two particular portions of the 1989 Act give it the power to end the historical role of local sanitary districts in waste collection and disposal.

The county first cites to Public Resources Code[1] section 40059, which provides in pertinent part: "(a) Notwithstanding any other provision of law, each *county,* city, *district,* or other local governmental agency may determine all of the following: [¶] (1) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services. [¶] . . . [¶] (b) Nothing in this division modifies or abrogates in any manner

---

[1]All subsequent section references are to the Public Resources Code unless otherwise indicated.

either of the following: [¶] (1) Any franchise previously granted or extended by any *county or other local governmental agency*." (Italics added.) The county argues that the language found in section 40059 refers to the *operation of* the 1989 Act, not to actions taken *pursuant to* the 1989 Act, and thus the Legislature did not intend to prevent counties from acting to modify or abrogate existing contracts and permits. We disagree.

If anything, section 40059 appears to support the position asserted by the districts, not the county. This section specifically preserves the districts' power over garbage collection as an issue of "local concern" (see *Waste Resources, supra*, 23 Cal.App.4th at pp. 307-309; *Empire Waste, supra*, 67 Cal.App.4th at pp. 721-723), and also provides that this power over issues of local concern shall prevail over "any other provision of law." As the Attorney General has recognized, section 40059 overrides or supersedes any other provisions of the 1989 Act which might indicate to the contrary: "The Legislature has recognized that the terms of section 40059 may be inconsistent with the language of some other statute or statutes and has determined that the conflict should be resolved in favor of section 40059's terms and conditions." (79 Ops.Cal.Atty.Gen. 28, 33 (1996).)

It is, of course, true that section 40059 grants to the county, as well as to the districts, the same right to determine matters of local concern within the county's own jurisdiction. However, section 40059 does not provide that the county can override the districts' authority over matters of refuse collection within the borders and jurisdiction of the districts. This section also appears to envision, by including specific reference to districts, that they will continue to fulfill this local function. Absent from section 40059 is any expression by the Legislature of intent to change the law in this respect, or erase the customary role of sanitary districts in performing their traditional function. (See *Waste Resources, supra*, 23 Cal.App.4th at pp. 307-309; *Empire Waste, supra*, 67 Cal.App.4th at pp. 721-723.)

The county also refers to section 49520, which forbade the immediate cancellation of existing waste haulage contracts, upon passage of the 1989 Act, but allowed the cancellation of existing waste haulage contracts on five years' notice, by providing in part: "If a local agency has authorized . . . a solid waste enterprise to provide solid waste handling services and those services have been lawfully provided for more than three previous years, the solid waste enterprise may continue to provide those services up to five years."[2] The county asserts that the foregoing "confirms that even existing contracts may be terminated after proper notice and the expiration of the

---

[2]Section 49520, which grants a five-year period before existing garbage collection contracts would be voided, was not an entirely novel idea. Former section 4272 of the Health and Safety Code (repealed by Stats. 1989, ch. 1095, § 20, p. 3810, now Pub. Resources Code,

statutory period" and, in any event, sections 49520 and 40059 were intended to protect waste haulers and not the districts.

We agree, at least in part, with the county's assertion that this provision is intended to protect not the districts, but the waste haulers. However, this provision also was not intended, nor does it purport, to allow the county to override the independent authority of the *districts* on five years' notice, as the county implies. Section 49520 is silent on that point, and is best interpreted as a compromise which protected, to some extent, the waste haulers' existing contracts. This is consistent with the interpretation of section 49520 adopted by the *P.J.B. Disposal* court, with which we agree. (*See P.J.B. Disposal, supra*, 61 Cal.App.4th at pp. 146-147.)[3]

The county also adverts generally to the overall structure of the 1989 Act, and the asserted policies underlying it, as evidencing the Legislature's intent to displace the authority of local sanitary districts, sub silentio. It is true, as the county urges, that the 1989 Act envisions the preparation and implementation by the county of "countywide integrated waste management plans," in order to encourage recycling and less wasteful practices (§§ 41750-41813), which we do not doubt are worthy goals. Indeed, a county that fails to prepare an adequate plan is subject to a fine of up to $10,000 per day for its noncompliance. However, there is nothing in these sections regarding the preparation and implementation of the countywide plan, which specifically endows a county with the authority to take over the operations of local independent sanitary districts. Any such implication would in any event be inconsistent with, and overridden by, the provisions of section 40059. (*Campbell* v. *State Farm Mut. Auto. Ins. Co.* (1989) 209 Cal.App.3d 871, 875 [257 Cal.Rptr. 542] ["To find in respondent's favor, we would have to interpret away clear language in favor of an ambiguity that does not exist."].)[4]

---

§ 49521) contained a similar five-year continuation provision, which this court (Division Five of the First Appellate District) addressed in *City of Santa Rosa* v. *Industrial Waste & Debris Box Rentals, Inc.* (1985) 168 Cal.App.3d 1132, 1134-1136 [214 Cal.Rptr. 737].

[3] The county also asserts that, even though section 40059 provides that nothing in the 1989 Act abrogates the districts' traditional authority over waste collection, the county could still exercise its police power to overrule the districts' authority. However, as we have seen, the counties have never previously been permitted to use their police power to control sanitary districts within their county boundaries. As we have concluded, neither does the 1989 Act grant the county such a right.

[4] The preparation of such countywide plans was not an entirely new idea. Former Government Code section 66780 (added by Stats. 1972, ch. 342, § 1, pp. 649-650, amended and renumbered as § 66780.1, by Stats. 1982, ch. 1468, § 2, p. 5658, and repealed by Stats. 1989, ch. 1095, § 4, p. 3810), had also required each county to prepare a solid waste management plan, and the Legislature had sought to encourage recycling as a component of such plans.

It must be conceded that the 1989 Act is somewhat unclear in describing the role to be played by the local districts in this planning and implementation process, since the districts are not mentioned at all in that connection. Although the 1989 Act is not always "a model of clarity" (*P.J.B. Disposal, supra,* 61 Cal.App.4th at p. 148, fn. 14), we find ourselves in agreement with the *P.J.B. Disposal* court's observation that some of the seeming lack of clarity or apparent logical gaps in the statute may be the result of deliberate choices by the Legislature, rather than inadvertence. (*Ibid.*) The Legislature recognized that a countywide planning approach would be appropriate, without thereby preempting the local powers of sanitary districts and cities within the county to continue their local garbage collection operations, an area consistently recognized as one of local concern. (See *Waste Resources, supra,* 23 Cal.App.4th at pp. 307-309; *Empire Waste, supra,* 67 Cal.App.4th at pp. 721-723.)

A review of the legislative history of the 1989 Act also supports our conclusion that its passage was not intended to alter the traditional authority of the districts, and therefore we would reach the same result even if the language of the 1989 Act were thought to be ambiguous on this point. (See *People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) Any changes that the 1989 Act made to existing law did not alter the authority of local sanitary districts over the collection and disposal of solid waste. Rather, this act replaced the then-existing Waste Management Board with a California Integrated Waste Management Board, composed of full-time members; replaced the then-existing county solid waste management plan process with the renamed county integrated waste management plan process; and carried out technical legislative code maintenance, by reorganizing and renumbering various existing statutes from the Government Code and Health and Safety Code into the Public Resources Code.[5] Among the renumbered statutes were the predecessors to sections 40059 (derived from former Gov. Code, § 66757) and 49520 (derived from former Health and

---

(See former Gov. Code, § 66701, added by Stats. 1972, ch. 342, § 1, p. 643 and repealed by Stats. 1989, ch. 1095, § 3, p. 3810.)

[5]The 1989 Act arose from the recommendations of the Senate Task Force on Waste Management, which was created in 1988. The Senate task force, which included representatives from the solid waste industry, government agencies, and the public, issued a report to the Legislature. This report then formed the basis for negotiations and subsequent agreements reached between the Legislature and a separate Governor's task force. Thus, a consensus between the Governor's administration and the Legislature was reached, which ultimately resulted in the introduction and passage of Assembly Bill No. 939 in the 1989 Legislature, creating the Integrated Waste Management Act of 1989 (Environmental Affairs Agency, Enrolled Bill Rep., Assem. Bill No. 939 (1989-1990 Reg. Sess.) Sept. 21, 1989). There is no evidence that these discussions or consensus encompassed any issues that would alter the districts' authority to collect this refuse, and in the absence of such evidence we cannot conclude there was any intent to vary existing law in that respect.

Saf. Code, § 4272.) Nowhere in the 1989 Act or its legislative history is there any suggestion that its passage was intended to allow counties to assume the powers of local sanitary districts. As the court in *Baldwin* observed in a similar context, the county's argument that there was some unexpressed legislative intent to overrule the district's authority "invites us to read legislative history tea leaves; we decline the invitation." (*Baldwin, supra,* 31 Cal.App.4th at p. 181, fn. 10.)

The county itself acknowledges there is no language in the 1989 Act explicitly repealing the districts' legal authority to continue to perform its waste collection activities under the 1923 Act, but it suggests we should find an implied repeal of the districts' authority. However, implied repeals are disfavored. The repeal of the districts' authority would certainly not be implied unless such authority was completely irreconcilable with the 1989 Act. (See *Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086] (*Stop Youth Addiction*).) Because we conclude the districts' authority under the 1923 Act is not inconsistent with the 1989 Act, and is explicitly preserved by section 40059, contained in the latter act, a finding of implied repeal is unwarranted.

At oral argument the county attempted to refine its contentions, suggesting that the underlying difficulty arises from the Legislature's failure to recognize, at the time of passage of the 1989 Act, potential conflict between the countywide planning process and the districts' continued legal authority. Because the 1989 Act imposed no duties on the districts relative to the 1989 Act's planning process, the county asserts it is anomalous that the county faces exposure to fines upon failure to enact and implement a countywide plan in accordance with the 1989 Act, while the districts might flout the act's provisions with impunity. The only way to resolve this apparent anomaly, the county reasons, is to judicially reform the 1989 Act by imposing a new legal construction. In the guise of interpretation, we are asked to repeal the districts' traditional authority over waste management.

First, as discussed above, we reject the county's argument because the perceived anomaly may, in fact, be intentional on the part of the Legislature. Second, the 1923 and 1989 Acts may be harmonized by recognizing the districts' authority as being contained within the 1989 Act. Further, it is not at all clear that the Legislature, if faced with this problem, would have responded by repealing the districts' authority. We must leave resolution of this question to the Legislature, should it desire to repeal existing law. (See *Stop Youth Addiction, supra,* 17 Cal.4th at p. 569.) As our Supreme Court has observed, in interpreting another apparent anomaly in the recycling provisions of the 1989 Act: "Our holding is based on the Act as it is written, not on a different, perhaps broader, version that could have been, or still may be, enacted." (*Waste Management, supra,* 7 Cal.4th at p. 490.)

Finally, we find additional support for our conclusions in a decision from Division One of the First Appellate District, *City of Dublin* v. *County of Alameda* (1993) 14 Cal.App.4th 264, 280 [17 Cal.Rptr.2d 845]. There, the court wrote that the 1989 Act "expresses the need for a comprehensive program for solid waste management and sets waste reduction goals for cities and counties; at the same time, it also emphasizes local discretion in developing programs and acknowledges that many aspects of solid waste handling are of local concern." (*Ibid.*) Thus, despite its planning components, the 1989 Act specifically anticipates a continuation of existing local control over garbage collection services, which therefore remains subject to the control of local voters and the process of initiative or referendum.

At bottom, we conclude that the planning process envisioned by the 1989 Act does not alter the existing powers of local sanitary districts to act independently on matters within their legal jurisdiction. (See *Waste Management, supra*, 7 Cal.4th at p. 490; *West Bay Sanitary, supra*, 191 Cal.App.3d at p. 1512.)

In light of this conclusion, we need not address the remaining contentions of the appellant districts.[6]

III. DISPOSITION

The judgments are reversed.

Jones, P. J., and Haning, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 18, 1999.

---

[6]The districts also asserted, for instance, that even if the county had the legal power to assume garbage collection operations within the districts, the county should pay the districts damages for inverse condemnation of the districts' rights to the income stream generated by these operations. The districts also brought other tort claims relating to this subject matter. Since we conclude the county did not have legal authority to assume these district functions, we need not address any of the districts' other contentions.